**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| North Dakota, ex rel. Wayne Stenehjem, Attorney General for the State of North Dakota, | ) ) ) ) | **ORDER GRANTING IN PART AND DENYING IN PART THE COUNTIES' MOTION FOR PARTIAL SUMMARY** |
| Plaintiff, | ) ) | **JUDGMENT AND DENYING THE** |
| vs. | ) ) | **UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| United States of America, | ) ) | |
| Defendant. | ) ) | Case No. 1:12-cv-125 (lead case) |

| | | |
|---|---|---|
| Billings County, North Dakota; Golden Valley County, North Dakota; McKenzie County, North Dakota; and Slope County, North Dakota, municipal entities, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| United States of America, | ) ) | Case No. 1:12-cv-102 (consolidated case) |
| Defendant. | ) ) | |

Before the Court are two motions: "Plaintiffs Billings County, et al.'s Motion for Partial Summary Judgment" and the "United States' Motion for Partial Summary Judgment" filed on April 19, 2019. See Doc. Nos. 237 and 238. On July 30, 2012, Billings County, McKenzie County, Slope County, and Golden Valley County initiated an action against the Defendant United States of America ("United States") to quiet title to their claims of section line rights-of-way in the Little Missouri National Grassland as well as six individual roads claimed by McKenzie County. See Doc. No. 1 (Case No. 1:12-cv-102). The State of North Dakota then filed a complaint on

September 14, 2012, against the Defendant United States to quiet title to its claim of section line rights-of-way within the Little Missouri National Grassland, the Sheyenne National Grassland, and the portion of the Cedar River National Grassland located in North Dakota, all which are a part of the Dakota Prairie Grasslands. See Doc. No. 1 (Case No. 1:12-cv-125). The Counties[1] filed an amended complaint on October 4, 2012, and later filed a second amended complaint upon leave of the Court on February 19, 2013. See Doc. Nos. 6 and 15 (Case No. 1:12-cv-102). The Court eventually consolidated the two actions, with North Dakota's action designated as the lead case (Case No. 1:12-cv-125) and the action by the Counties as the consolidated case (Case No. 1:12-cv-102). See Doc. No. 24. After consolidation, the Counties twice more amended their complaint.[2] See Doc. Nos. 163 and 229.

Several years after the two cases were consolidated, the United States filed motions to dismiss both North Dakota and the Counties' claims to quiet title to section line rights-of-way within the Dakota Prairie Grasslands in North Dakota. See Doc. Nos. 88 and 169. On June 26, 2017, the Court granted the United States' motions to dismiss North Dakota's claim to quiet title to section line rights-of-way in the Dakota Prairie Grasslands and the Counties' claim to quiet title to section line rights-of way in the Little Missouri National Grassland. The Court held it lacked jurisdiction over the claims because the Quiet Title Act ("QTA") limitation period had run before the actions were commenced. See Doc. No. 190. Therefore, six causes of action brought by the Counties, as alleged in the Counties' fourth amended and supplemental complaint, remain in

---

[1] Plaintiff North Dakota and Plaintiffs Billings County, McKenzie County, Slope County, and Golden Valley County are collectively referred to by the Court as "Plaintiffs." When referring to Plaintiff North Dakota individually, the Court uses the terms "North Dakota" or "State." When the Court refers to Plaintiffs Billings County, McKenzie County, Slope County, and Golden Valley County inclusively, but exclusive of Plaintiff North Dakota, the Court uses the term "Counties."

[2] On September 16, 2019, the Counties requested leave of court to file a fifth amended complaint. See Doc. No. 261. The Court denied the Counties' request on October 1, 2019, finding that if the Court were to permit the Counties to file a fifth amended complaint, such would cause undue delay and prejudice to the United States. See Doc. No. 265.

dispute: (2) Quiet Title to County Road #193, (3) Quiet Title to Township Road #172/Road #1, (4) Quiet Title to Road #2, (5) Quiet Title to Road #3, (6) Quiet Title to Township Road #169, and (7) Quiet Title to County Road #30. See Doc. No. 229.

In their motion for partial summary judgment, the Counties request the Court quiet title to several of the enumerated roads in its favor. In its motion for partial summary judgment, the United States' contends the Court lacks jurisdiction over several of the Counties' claims to specific roads, and, alternatively, the United States contends it is entitled to judgment as a matter of law for several roads. The United States filed a response in opposition to the Counties' motion for summary judgment on May 24, 2019. See Doc. No. 254. The Counties also filed a response to the United States' motion for summary judgment on May 24, 2019. See Doc. No. 253. Both the Counties and the United States filed reply briefs on June 14, 2019. See Doc. Nos. 255 and 256. For the reasons set forth below, the Court denies the United States' motion to dismiss for lack of jurisdiction and denies its motion for summary judgment and denies in part and grants in part the Counties' motion for summary judgment.

## I. PROCEDURAL & FACTUAL BACKGROUND

In its previous order dismissing the Counties' first cause of action to quiet title to rights-of-way along section lines within the Little Missouri National Grassland as well as North Dakota's claims to section line rights-of-way, the Court extensively discussed the historical backdrop and procedural history of this matter. See Doc. No. 190. For the purposes of reviewing the motions before it, the Court's discussion of the procedural and factual background is limited to McKenzie County's remaining claims. The remaining claims by McKenzie County against the United States arise from the parties' controversy surrounding the parties' interest in certain roads, not wholly located along section lines, within the Little Missouri National Grassland. Specifically, in its

fourth amended complaint, McKenzie County seeks to quiet title to certain enumerated roads within McKenzie County: County Road #193 (Claim 2), Township Road #172/Road #1 (Claim 3), Road #2 (Claim 4), Road #3 (Claim 5), Township Road #169 (Claim 6), and County Road #30 (Claim 7). <u>See</u> Doc. No. 229.

The Counties allege County Road #193, also known as "Long X Divide Road," was established by public use as early as 1884, while the lands it traverses were part of the public domain. <u>Id.</u> at 20. County Commissioners later established County Road #193 through petition. <u>Id.</u> at 21.

According to the Counties, Township Road #172 was established as a public right-of-way by petition and road order, with the road declared open and established on August 17, 1922, while Road #1 was established as a public right-of-way through prescriptive use across private lands. <u>Id.</u> at 26-29. Beginning in 1934, the United States reacquired the property transected by Township Road #172/Road #1 through condemnation proceedings, "subject to and excepting all existing public roads, public utility easements and rights-of-way." <u>Id.</u> at 29.

Roads #2 and #3, as alleged in the complaint, were "established along a section line and as a prescriptive road established pursuant to North Dakota law" although they deviate to conform to topography. <u>Id.</u> at 31-32, 35. The Counties further allege Roads #2 and #3 were established as public roads across public domain and across private lands under state law. <u>Id.</u> at 33, 35. More specifically, the Counties allege Roads #2 and #3 were established through prescription prior to the United States' reacquisition of the private lands they traverse. <u>Id.</u>

The Counties allege Township Road #169, also known as "Charlie Bob Creek Road," was established by petition and road order. <u>Id.</u> at 40. Specifically, the Counties allege the road was declared open and established on August 17, 1922. <u>Id.</u> at 41. Township Road #169 was then extended in 1925 and the Rhoades Township Supervisors paid damages to the landowners whose

land was crossed by the extension of Township Road #169.  Id. at 42.   According to the Counties, Rhoades Township again relocated a portion of Township Road #169 and McKenzie County later reconstructed another portion of the road to make it safer.  Id. at 42-43.  The Counties allege the lands over which Township Road #169 cross were acquired by the United States by warranty deed, with some deeds specifically providing that the parcels were acquired "subject to a right-of-way for public roads along section lines as created by statutes.  Id. at 45.

County Road #30, as alleged in the complaint, was established by petition and road order pursuant to North Dakota law and the road was declared open on July 20, 1908.  Id. at 46-47.  The United States acquired some of the lands crossed by County Road #30 by condemnation judgment "subject to and excepting all existing public roads, public utility easements and rights of way as now located on and across parts of said lands."  Id. at 48-49.

In its motion before the Court, the United States contends this Court lacks jurisdiction over the Counties' second (County Road #193), third (Township Road #172), fourth (Road #2), and fifth (Road #3) causes of action because the Counties failed to bring those claims within the Quiet Title Act's statute of limitations.  Alternatively, the United States posits it is entitled to judgment in its favor as a matter of law as to the Counties' third (Township Road #172), fourth (Road #2), and fifth (Road #3) causes of action because the Counties "have failed to show a genuine issue of material fact" as to those claims.  In their opposing motion, the Counties contend they are entitled to summary judgment for their second (County Road #193), third (Township Road #172), fourth (Road #2), sixth (Township Road #169), and seventh (County Road #30) causes of action because there is no dispute as to the material facts which establish the existence of these roads before the United States reacquired the land traversed by the roads, and such reacquisition was subject to McKenzie County's interest in the roads.

## II.     STANDARD OF REVIEW

In its motion before the Court, the United States requests the Court dismiss some of the Counties' claims and, alternatively moves for summary judgment as to certain claims. It appears the United States requests the Court treat its motion to dismiss as one for summary judgment as the United States refers to the standard of review for motions for summary judgment and entitled its motion one for "partial summary judgment." However, because the United States' request to dismiss the Counties' claims to County Road #193, Township Road #172/Road #1, Road #2, and Road #3 challenges the Court's jurisdiction, the Court treats this portion of the United States' motion as a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### A.     MOTION TO DISMISS

In its motion, the United States first requests the Court dismiss the Counties' claim to County Road #193, Township Road #172/Road #1, Road #2, and Road #3 as alleged in the Counties' fourth amended complaint. When considering a motion to dismiss, the Court must generally construe the complaint liberally and assume all factual allegations to be true. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). Dismissal will not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief.

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Here, the United States asserts a factual challenge to the Court's jurisdiction. In such a factual 12(b)(1) motion, the trial court's jurisdiction – its very power to hear the case – is at issue, and the trial court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). As a result, "no presumptive truthfulness attaches to the plaintiff's allegations" and

the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 744 (8th Cir. 2001).  The burden is on the plaintiff to demonstrate jurisdiction exists.  Id.


## B.    SUMMARY JUDGMENT

In its motion for partial summary judgment, the United States alternatively requests the Court grant summary judgment in its favor as to the Counties third cause of action (Township Road #172), fourth cause of action (Road #2), and fifth cause of action (Road #3).  In a competing motion for summary judgment, the Counties request the Court grant judgment in their favor as to their second (County Road #193), third (Township Road #172), fourth (Road #2), sixth (Township Road #169), and seventh (County Road #30) causes of action.

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-

moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial.  Id.; Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court must consider the substantive standard of proof when ruling on a motion for summary judgment.  Anderson, 477 U.S. at 252.

### III.   LEGAL ANALYSIS

Before addressing the parties' competing motions for summary judgment, the Court first addresses the United States' contention this Court lacks jurisdiction over some the Counties' claims.

### A.   MOTION TO DISMISS

The Counties' complaint was brought pursuant to the Quiet Title Act, 28 U.S.C. § 2409a.  The United States' contends this Court lacks jurisdiction over the Counties' claims to rights-of-way for County Road #193, Township Road #172/Road #1, Road #2, and Road #3 because the Counties failed to bring these claims within the QTA's limitation period.  Specifically, the United States contends the 1977 Travel Plan for the Little Missouri National Grassland, and the United States' closure of segments of County Road #193 and Road #2 when the fencing of the southern border of the Theodore Roosevelt National Park[3] in the 1950s and 1980s put the Counties on notice of the United States' claim to  County Road #193, Township Road #172/Road #1, Road #2, and

---

[3] The Court references the Theodore Roosevelt National Park throughout its order.  Although the Theodore Roosevelt National Park was not duly established until 1978, the Court uses the term of refer to lands within the Park prior to the Park's establishment in 1978 as a matter of convenience.

Road #3.  The Counties contend their claims are timely as their complaint was filed within the twelve (12) year statute of limitations of the Quiet Title Act and the Court has jurisdiction over the matter.

The United States is immune from suit absent a waiver of sovereign immunity.  <u>Hart v. United States</u>, 630 F.3d 1085, 1088 (8th Cir. 2011).  The Quiet Title Act ("QTA") provides a limited waiver of sovereign immunity:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.

28 U.S.C. § 2409a(a).  The QTA is the exclusive means by which an adverse claimant can challenge the United States' title to real property.  <u>Block v. North Dakota <i>ex rel.</i> Bd. of Univ. & Sch. Lands</u>, 461 U.S. 273, 286 (1983).  "Because the QTA waives the government's sovereign immunity from suit, a plaintiff must comply with the limitations period to effectuate that waiver.  Hence the QTA statute of limitations acts as a jurisdictional bar unlike most statutes of limitations, which are affirmative defenses."  <u>Spirit Lake Tribe</u>, 262 F.3d at 737-38 (internal citations omitted).[4]

Subsection (g) of 28 U.S.C. § 2409a, describes the statute of limitations applicable to claims brought by persons or entities, such as a county:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued.  Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g).  In <i>Spirit Lake Tribe</i>, the Eighth Circuit discussed the operation of the statute of limitations of subsection (g).  Specifically the Eighth Circuit stated that subsection (g) does not

---

[4] The Court has previously noted, and once again notes, that some circuit courts of appeal have questioned whether the QTA's limitations period serves as a jurisdictional bar.  <u>See</u> Doc. No. 190, n. 4.

require the government to provide explicit notice of its claim.  <u>Spirit Lake Tribe</u>, 262 F.3d at 738. In fact, the government's claim need not be "clear and unambiguous."  <u>Id.</u> (citing <u>North Dakota *ex rel.* Bd. of Univ. & Sch. Lands v. Block</u>, 789 F.2d 1308, 1313 (8th Cir. 1986).  "Knowledge of the claim's full contours is not required.  All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's."  <u>Id.</u> (quoting <u>Knapp v. United States</u>, 636 F.2d 279, 283 (10th Cir. 1980)).  Courts have consistently held that to trigger the QTA general limitation period in subsection (g) a plaintiff must have a "reasonable awareness that the Government claims some interest *adverse* to the plaintiff's."  <u>Knapp</u>, 636 F.2d at 283 (emphasis added); <u>see</u>, <u>e.g.</u>, <u>Kane Cnty. v. United States.</u>, 772 F.3d 1205, 1215 (10th Cir. 2014); <u>Michel v. United States</u>, 65 F.3d 130, 131-32 (9th Cir. 1995); and <u>North Dakota ex rel Bd. of Univ. & Sch. Lands v. Block</u>, 789 F.2d 1308, 1313 (8th Cir. 1986).  The only notice sufficient to trigger the limitation period is notice of an *adverse* claim, <u>San Juan Cnty. v. United States</u>, 754 F.3d at 787, 795-96 (10th Cir. 2014), because when the plaintiff claims a non-possessory interest in property, such as a right-of-way, "knowledge of a government claim of ownership may be entirely consistent" with the plaintiff's claim.  <u>Michel</u>, 65 F.3d at 132.

Therefore the Court is tasked with determining whether the Counties complied with the limitations period of the QTA to effectuate a waiver of sovereign immunity by the United States. The Counties attempt to quiet title is barred if they knew or should have known of the United States' adverse claim to County Road #193, Township Road #172/Road #1, Road #2, and Road #3 by July 30, 2000, as the Counties instituted their action on July 30, 2012.  <u>See</u> Doc. No. 1 (Case No. 1:12-cv-102).


      i.        **<u>1976/1977 TRAVEL PLAN</u>**

On June 26, 2017, the Court dismissed the Counties' and North Dakota's claims to quiet title to rights-of-way along section lines within the Dakota Prairie Grasslands. <u>See</u> Doc. No. 190. In its order, the Court concluded the limitations period of the Quiet Title Act had run prior to the Counties and North Dakota bringing their claims to quiet title to the rights-of-way along section lines. Specifically, the Court held "[t]he [1976/1977] Travel Plan and the accompanying public notice are sufficiently specific as to be reasonably calculated to put North Dakota on notice of the United States' claim to exclusive control over the thirty-three feet on either side of section lines in the Little Missouri National Grassland." <u>See</u> Doc. No. 190, p. 46. The Court further concluded the Counties also knew or should have known of the United States' claim based upon the 1976/1977 Travel Plans for Sheyenne National Grassland and Little Missouri National Grassland and accompanying "Public Notice" and signage. <u>Id.</u> at 70. Therefore, the Court concluded this communication triggered the QTA limitation period for both North Dakota's and the Counties' section line claims. <u>Id.</u> Relying upon the Court's previous holding, the United States takes the position here that the Counties knew or should have known of the United States' claim to Township Road #172/Road #1 and Road #3 based upon the same 1976/1977 Travel Plan, and accompanying Travel Map.

In its previous order, the Court discussed the 1976/1977 Travel Plan exhaustively:

[T]he 1976/1977 Travel Plan for the Little Missouri National Grassland purports to restrict all motorized vehicles including trail bikes, scooters, trikes, and motorcycles to *existing roads* within certain portions of the grassland. <u>See</u> Docket No. 90, Ex. A, Attach. 21a, p. 10 (emphasis added). Unlike the 1974 Badlands Plans and the 1975 Rolling Prairie Plan, the 1976/1977 Travel Plan for the Little Missouri National Grassland clearly defined the phrase "existing road" as "a route traveled by four-wheeled vehicles that shows recurring use of more than one year's duration with soil displacement and compaction present to the extend [*sic*] that vegetation is sparse or absent from wheel tracks." <u>See</u> Docket No. 90, Ex. A, Attach. 21e, p. 1. This definition was not only included in the Travel Plan, but was included in the "Public Notice." <u>See</u> Docket No. 90, Ex. A, Attach. 21e, p. 1. This definition of "existing road" intrinsically serves to exclude travel within the thirty-three feet on either side of section lines when recurring use with soil displacement

and compaction are not present. Thus, by defining the phrase "existing road" in this way so as to restrict travel along section lines in certain portions of Little Missouri National Grassland, the Travel Plan, along with the Public Notice, demonstrate the United States' claim to exclusive control over the thirty-three feet on either side of section lines. The Travel Plan and the accompanying public notice are sufficiently specific as to be reasonably calculated to put North Dakota on notice of the United States' claim to exclusive control over the thirty-three feet on either side of section lines in the Little Missouri National Grassland.

Id. at 45-46.

The linchpin of the Court's prior analysis of the 1976/1977 Travel Plan was that the section lines which the Counties and North Dakota sought to quiet title clearly fell outside the scope of the Travel Plan's definition of "existing road" and, therefore, the Travel Plan excluded travel along section lines, triggering the QTA limitation period. The United States is correct that the same analysis is warranted here; however, the same conclusion does not necessarily follow. Whether the 1976/1977 Travel Plan triggered the statute of limitations for the Counties' claim to quiet title to Township Road #172/Road #1 and Road #3 depends on whether those roads were routes "traveled by four-wheeled vehicles that shows recurring use of more than one year's duration with soil displacement and compaction present to the extend [sic] that vegetation is sparse or absent from wheel tracks." See Doc. No. 90, Ex. A, Attach. 21e, p. 1. The United States contends neither the Travel Map, published along with the 1976/1977 Travel Plan, nor contemporaneous maps depict Township Road #172/Road #1 or Road #3. Thus, the United States reasons these roads were not "existing roads" and the 1976/1977 Travel Plan restricted travel along these routes, which consequentially triggered the QTA limitation period. The Counties contend Township Road #172/Road #1 and Road #3 were "existing roads" and not closed under the Travel Plan and accompanying Travel Map.

In support of their contentions, the parties submitted historical maps, aerial photographs, and supporting affidavits. At this stage of the case, the Court has only viewed electronic copies of

these maps and aerial photography. The Court has not had the benefit of an in-person review of the physical maps and aerial photographs. The Court finds it nearly impossible to reasonably determine whether Township Road #172/Road #1 and Road #3 were "existing roads" under the 1976/1977 Travel Plan (i.e. "traveled by four-wheeled vehicles that shows recurring use of more than one year's duration with soil displacement and compaction present to the extend [sic] that vegetation is sparse or absent from wheel tracks") from its review of the submitted maps and aerial photography. Moreover, most, if not all, of the maps and aerial photography submitted by the parties in support of their motions lack helpful descriptions, direction, and/or legends or contain such small print they are unreadable in an electronic format. Therefore, at this stage, the Court declines to conclude the 1976/1977 Travel Plan and Travel Map triggered the QTA limitation period for the Counties' claims to quiet title to Township Road #172/Road #1 and Road #3. This issue is better addressed by the Court after the presentation of evidence at trial.

ii.        **THEODORE ROOSEVELT NATIONAL PARK CLOSURE**

The United States next contends the QTA limitations period has run as to the Counties' claims to quiet title to County Road #193 and Road #2 because the Counties knew or should have known of the United States' claim to those roads when the National Park Service fenced the southern boundary of the North Unit of the Theodore Roosevelt National Park ("Park") in the 1950s and 1980s, effectively closing portions of County Road #193 and Road #2. See Doc. No. 251, p.p. 33-35. In response, the Counties contend the fencing of the Park did not trigger the QTA limitation period for the portions of County Road #193 and Road #2 outside the Park because the closure only limited travel inside the park while the exterior portion of the roads remained open to public use. In support of its contention, the Counties rely upon the Tenth Circuit Court of Appeal's decision in *San Juan County*, 754 F.3d 787 (10th Cir. 2014).

In *San Juan County*, the County and the State of Utah claimed a right-of-way to Salt Creek Road, in Canyonlands National Park, was established through R.S. 2477 and the United States could not restrict travel along the road. The district court concluded the County and the State failed to demonstrate the requisite ten years of continuance use of Salt Creek Road under Utah state law to establish the right-of-way as an R.S. 2477 grant. Id. at 792. On appeal, before reaching the merits of the County's claim, the Tenth Circuit addressed whether the County timely brought its claim under the QTA. The United States contended two road closures triggered the QTA limitations period: (1) In 1969, the United States closed the "historical access road" to access Salt Creek Road from the Canyonlands' park entrance road, and constructed a new one and (2) in the mid-1970s, the United States closed a road segment south of the disputed portion of Salt Creek Road. Both of the closed roads were nearly adjacent to a portion of Salt Creek Road that San Juan County and the State of Utah sought to quiet title. Id. at 793-94. San Juan County contended the road closures by the United States did not trigger the limitation period because "the United States continued to allow the public to use Salt Creek Road, which remained accessible via the new access road." Id. at 794. The Tenth Circuit agreed with the County and concluded:

> Because the public continued to have access to Salt Creek Road consistent with the claimed right-of-way, neither of the United States' road closures provided the county with sufficient notice of the United States' claim of a right to exclude the public, as would be necessary to assert a claim of exclusive ownership to Salt Creek Road (its right to exclude offers).

Id. (citing George, 672 F.3d at 947).

Here, portions of County Road #193 and Road #2 were closed in the 1950s by fencing, with a new fence constructed in 1983. The Counties contend the portions of County Road #193 and Road #2 outside the Park continued to be used by the public after the construction of the fence. The United States disputes the public's use of County Road #193 and Road #2 after the Park was fenced and contends the closure of County Road #193 and Road #2 provided notice of the United

States' adverse interest as to the entire length of the roads, thus triggering the QTA limitation period as to those roads.

The Court first notes that the plaintiff is the master of his complaint and may choose to limit his claims. C.f. M. Nahas & Co., Inc. v. First Nat'l Bank, 930 F.2d 608, 611 (8th Cir. 1991). In their complaint, the Counties have limited their claims to quiet title to the right-of-way along County Road #193 and Road #2 outside the Theodore Roosevelt National Park. The Counties may certainly "limit the scope of [their] claim to avoid both untimely claims and issues irrelevant" to the rights they seek to protect. San Juan Cnty., 754 F.3d at 794-95. Moreover, it is clear from the record that those portions of County Road #193 and Road #2 outside of Theodore Roosevelt National Park were open to the public after the fencing in 1950s and re-fencing in the 1980s. The deposition testimony demonstrates farmers, ranchers, and hunters in the area travelled along County Road #193, as well as Road #2, to manage livestock and range improvements, hunt, and recreate. See Doc. Nos. 248-1, pp. 21, 29, and 30; 248-4, pp. 35-36; and 249-2, p. 30. As in *San Juan County*, the public unquestionably continued to have access to County Road #193 and Road #2 consistent with the Counties' claimed right-of-way along those roads. The deposition testimony also demonstrates there were gates across County Road #193 and Road #2 in the fence surrounding the Theodore Roosevelt National Park. See Doc. No. 248-1, pp. 22, 32. At least one local rancher testified he continued to access Road #2 for the purposes of managing livestock, although less frequently, into the Park through this gate after the fence was constructed. See id. at 32.

Given the deposition testimony, the Court concludes the fencing of the Theodore National Park in the 1950s and re-fencing in the 1980s did not trigger the QTA limitations period as to the portion of County Road #193 and Road #2 outside the Park. As in *San Juan County*, the United States' fencing of the Park is insufficient notice to the Counties' of the United States' claimed right to exclude the public from the disputed portion of County Road #193 and Road 2 when such

disputed portions of the road were accessible and used by local farmers, ranchers, hunters and recreationists.  See San Juan Cnty., 754 F.3d at 794.  Moreover, the portions of County Road #193 and Road #2 that remained open after fencing certainly had "remaining utility" separate from the fenced portions of the roads to require additional notice to the Counties as the unfenced portions of Road #193 and Road #2.  C.f. Park Cnty. Assoc. v. United States, 626 F.3d 718, 721 (9th Cir. 1980).  When considering whether the fencing of the Park triggers the QTA limitation period, the Court considers that the United States, as the owner of the servient estate, has intrinsic power to regulate land use within the Park and constructing a fence is consistent with that intrinsic power. The Court previously discussed this intrinsic power to regulate land use, referencing *McFarland v. Norton*, 425 F.3d 724 (9th Cir. 2005):

> In *McFarland*, the 10th Circuit Court of Appeals described the relationship between the government, as owner of the servient estate, and an easement grantee:
>
>> The government, in its capacity as the owner of the servient tenement, has the right to reasonable use of its land, and its rights and the rights of easement owners are mutually limiting, though of course easements are burdensome by their very nature, and the fact that a given use imposes a hardship upon the servient owner does not, in itself, render that use unreasonable or unnecessary.  It follows that mild interference with the use of an easement pursuant to the government's own property interests will not start the statute of limitations running.
>
> 425 F.3d at 727 (internal citations and quotations omitted).  It is presumed the federal government has the power to regulate land use as the owner of the servient estate.  Thus, the Court distinguishes between regulatory actions that do not trigger the limitation period and actions that trigger the statute of limitations because they deny the existence of an easement.  It can be difficult "to distinguish reasonable regulations that happen to restrict use of the easement from actions taken incident to the government's claim of exclusive ownership." Id.  If the Court were to assume any regulatory action by the government that affects the easement triggers the statute of limitations, easement grantees and the government may be forced into premature and unnecessary suits.  See id.; Michel, 65 F.3d. at 132.

See Doc. No. 190, p. 62-63.

The Court concludes the fencing enclosing the Theodore Roosevelt National Park when a gate is constructed across County Road #193 and Road #2, standing alone, is a reasonable regulation that happens to restrict the public's use of those roads. Such fencing, consistent with the United States' intrinsic power to reasonably regulate land use, does not amount to a claim by the United States to exclusive control over the roads outside the Park. Therefore, such fencing did not trigger the QTA limitation period for the Counties' claims to the portions of County Road #193 and Road #2 outside the Park.[5]

Based upon the foregoing, the Court concludes, at this stage, dismissal of the Counties' claims to quiet title for County Road #193, Township Road #172/Road #1, Road #2, and Road #3 is not appropriate because (1) the fencing of the Theodore Roosevelt National Park did not provide the Counties sufficient notice of the United States' claim to exclusive control over County Road #193 and Road #2 outside the Park and (2) there are genuine issues of material fact in dispute that are best resolved by the benefit of trial testimony to determine whether the 1976/1977 Travel Plan for the Little Missouri National Grassland provided notice to the Counties of the United States' claim to exclusive control over Township Road #172/Road #1 and Road #2. Consequently, at this stage, the Court declines to dismiss the Counties' second (County Road #193), third (Township Road #172), fourth (Road #2), and fifth (Road #3) causes of action.

Satisfied with its exercise of jurisdiction at this juncture, the Court then turns to consider the parties' motions for summary judgment.


### B.     MOTIONS FOR PARTIAL SUMMARY JUDGMENT

---

[5] The Court's holding its limited to the portions of County Road #193 and Road #2 outside the Park. The Court's holding also does not apply or address whether any travel restrictions for County Road #193 and Road #2 inside the Park trigger the QTA limitation period.

Having determined it is not appropriate to dismiss the Counties' claims to quiet title to County Road #193, Township Road #172/Road #1, Road #2, and Road #3 at this stage, the Court next considers the parties' motions for partial summary judgment. In their motion for partial summary judgment, the Counties request the Court enter judgment in its favor as to its second, third, fourth, sixth, and seventh causes of action, quieting title to County Road #193, Township Road #172/Road #1, Road #2, Township Road #169, and County Road #30 in favor of McKenzie County. See Doc. No. 237. In its competing motion for partial summary judgment, the United States contends it is entitled to judgment as a matter of law as to the Counties' third (Road #1)[6], fourth (Road #2), and fifth (Road #3) causes of action. For the reasons set forth below, the Counties' motion is granted in part and denied in part and the United States' motion is denied.

In their fourth amended complaint and in their motion for partial summary judgment, the Counties essentially contend McKenzie County's interest in the enumerated roads arises from either: (1) the establishment of the road through the federal statutory grant, R.S. 2477, when the land the roads traversed was in the public domain and was later acquired by the United States through condemnation judgment or otherwise, or (2) the establishment of the road under state law, by petition or prescriptive use, when the land the roads traversed was in private ownership, but was later acquired by the United States through condemnation judgment or otherwise, with McKenzie County's interest in the roads reserved.

   i.  **<u>R.S. 2477</u>**

In 1866, Congress provided for public access across unreserved public domain lands by granting rights-of-way for the construction of highways by the passage of a statute that is

---

[6] The parties appear to disagree whether Township Road #172 and Road #1 are two separate roads or one road with a deviation. For the purposes of the pending motions, the Court treats the roads as two distinct roads.

commonly referred to as "R.S. 2477." R.S. 2477 read in its entirety as follows: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, Title VII, § 706(a), 90 Stat. 2743, 2793. See also Kane Cnty. v. United States, 772 F.3d 1205, 1209 (10th Cir. 2014). R.S. 2477 remained in effect for 110 years and many transportation routes in the western part of the United States were established under its authority. S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 740 (10th Cir. 2005). The establishment of a R.S. 2477 right-of-way required no administrative formalities: "no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the state or localities in whom the right was vested." Id. at 741. During this time, "congressional policy promoted the development of the unreserved public lands and their passage into private productive hands." Id. at 740.

In 1976, Congress "abandoned its prior approach to public lands and instituted a preference for retention of the lands in federal ownership, with an increased emphasis on conservation and preservation," by its enactment of the Federal Land Policy and Management Act of 1976 ("FLPMA"). Id. at 741. The FLPMA repealed R.S. 2477, but preserved "any valid" right-of-way "existing on the date of approval of this Act." Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat. at 2786, 2793; see also S. Utah Wilderness Alliance, 425 F.3d at 741. Consequently, the Counties allege the United States' ownership interest in the lands is subject to McKenzie County's valid right-of-way along roads.

ii.     **ESTABLISHING HIGHWAYS UNDER NORTH DAKOTA LAW**

In North Dakota, highways for public travel can arise by (1) petition process and subsequent road order, and (2) prescription. The Territorial Code of 1877 declared "all public highways which have been or may hereafter be used as such for twenty years or more shall be deemed public highways." Walcott Twp. v. Skauge, 71 N.W. 544, 546 (N.D. 1897). In *Berger v. Morton County*, 221 N.W. 270, the North Dakota Supreme Court held that since the adoption the 1897 Session Laws, the common law rule with respect to the establishment of a highway by prescription has been in force in North Dakota. 221 N.W. at 217-72. The North Dakota Supreme Court has well-articulated the necessary elements to establish a highway by prescription:

> To establish a highway by prescription, there must have been general, continuous, uninterrupted, and adverse use of the same as such by the public under a claim of right, for a period equal to that for the limitations of real actions.

Berger v. Berger, 88 N.W.2d 98, 100 (N.D. 1958). Current North Dakota Century Code § 24-07-01 embodies these fundamental requirements to establish a highway by prescription in North Dakota:

> All public roads and highways within this state which have been or which shall be open and in use as such, during twenty successive years, hereby are declared to be public roads or highways and confirmed and established as such whether the same have been laid out, established, and opened lawfully or not.

N.D.C.C. § 24-07-01.

In North Dakota, a highway may also be established by petition and road order. Under current North Dakota law, an appropriate board of county commissioners or township supervisors may "alter or discontinue any road or lay out any new road upon the petition of not less than six qualified electors who have an ownership interest in real estate in the vicinity of the road to be altered, discontinued, or laid out." N.D.C.C. § 24-07-05. When a road is laid out, it is "declared a public highway for all intents and purposes . . ." N.D.C.C. § 24-07-02. The procedure for laying out, altering, or discontinuing a highway requires the appropriate board having jurisdiction to

provide all occupants of the land with notice and hold and hearing on the petition. See N.D.C.C. § 24-07-10. Moreover, an order issued by the board and filed with the county auditor laying out, altering, or discontinuing a highway, "must be received in all courts as competent facts therein contained . . . ." N.D.C.C. § 24-07-15.

The Counties allege County Road #193 was first established as an R.S. 2477 road while the lands it traverses were in the public domain.[7] The Counties further allege Road #1, Road #2, and Road #3 were established as prescriptive roads pursuant to North Dakota law, with portions of Road #2 and Road #3 following section lines, prior to the United States reacquiring the lands traversed by the roads.[8] See Doc. No. 229, pp. 29, 31-34, 35-38. Finally, the Counties allege Township Road #172, Township Road #169, and County Road #30 were established by petition and road order under North Dakota law prior to the United States reacquiring the lands traversed by those roads. See Doc. No. 229, pp. 26-27, 41-44, and 46-48.

In its motion for partial summary judgment as to Road #1, Road #2, Road #3, the United States contends the Counties are unable to present any evidence demonstrating the roads arose by prescriptive use while the lands traversed by the road were in private ownership. In response, the Counties contend they have provided sufficient evidence, from which the Court can draw reasonable inferences, to demonstrate Road #1, Road #2, and Road #3 were established by prescriptive use under North Dakota law. In support of their contentions, the parties submitted affidavits, deposition testimony, historical reports, conveying documents, maps, aerial photographs, and other documents. The parties fundamentally disagree as to the inferences the

---

[7] The Counties additionally allege County Road #193 was later re-established as a road by petition prior to the United States reacquiring the lands in the 1930s. See Doc. No. 229, pp. 21, 24.

[8] For the portions of Road #2 and Road #3 following section lines, the Counties allege those portions of the road were established as a public right-of-way pursuant to R.S. 2477 based upon North Dakota's acceptance of the R.S. 2477 grant when the State enacted legislation declaring all section lines as public highways. See Doc. No. 229, pp. 32, 36.

Court can make from these documents and whether such inferences establish the roads arose by prescriptive use. Given the character and magnitude of the documents the Court must review to determine whether the roads arose by prescriptive use, the Court finds genuine issues of disputed fact exist and summary judgment is inappropriate at this stage of the litigation.

In the Counties' motion for partial summary judgment as to County Road #193, Township Road #172, Road #2, Township Road #169, and County Road #30, the Counties contend there is no dispute that County Road #193, Township Road #172, Township Road #169, and County Road #30 were legally opened as highways by petition and order pursuant to North Dakota law. The Counties' also contend there are no disputed facts that Road #2 as well as County Road #193 were established as a prescriptive highway by twenty (20) years of continuous use. In response, the United States contends (1) the Counties cannot establish County Road #193 as a R.S. 2477 road because North Dakota's recognition of prescriptive roads was not an acceptance of the R.S. 2477 grant, (2) the Counties cannot demonstrate Road #2 was established as a prescriptive road, and (3) there are questions of fact as to whether McKenzie County abandoned County Road #193 and Township Road #172. However, the United States concedes summary judgment as to Township Road #169 and County Road #30 "to the extent that those roads' opening documents are consistent with the current roads." See Doc. No. 254, p. 25. As discussed above in relation to the United States' motion for summary judgment, based upon the extensive review and interpretation by the Court of the multitude of documents filed by the parties, it is clear to the Court there are genuine issues of material fact in dispute as to the Counties' substantive claims to County Road #193 and Township Road #172.

The Court has thoroughly reviewed the parties' briefs in support of and in opposition to both motions for partial summary judgment, as well as the accompanying expert reports, historical documents, affidavits, and deposition testimony. After its extensive review, the Court finds the

record is replete with genuine issues of material fact in dispute, with too many unique, distinct factual issues to reasonably enumerate here.  <u>Davison</u>, 490 F.3d at 654.  Resolution of these material factual disputes undoubtably affects the outcome of the case.  Therefore, summary judgment as to County Road #193, Township Road #172/Road #1, Road #2, and Road #3 in favor of either party is not appropriate at this stage.

### iii.     TOWNSHIP ROAD #169 and COUNTY ROAD #30

As to Township Road #169 and County Road #30, the parties agree these roads were established by petition and road order prior to the United States' reacquisition of the lands surrounding the roads, and that such reacquisition was subject to McKenzie County's interest in the roads.  However, the record reveals there is a factual dispute as to whether County Road #30 significantly deviated from the road originally opened by petition and road order, and whether such deviation occurred prior to the United States' reacquisition of the lands traversed by County Road #30.  The Counties contend County Road #30, even with significant deviations, may be quieted in favor of McKenzie County, citing both North Dakota cases and a case out of a Montana state court.  However, the cases cited by the Plaintiff do not support their contention.  Consequently, the Court is convinced evidence regarding the deviation of County Road #30 should be presented at trial.  Therefore, based on the foregoing, the Court grants the Counties' motion for partial summary judgment as to Township Road #169, but finds there are genuine issues of material fact in dispute as to the Counties' claim to quiet title to County Road #30.

IV.     **CONCLUSION**

For the reasons set forth above, the Court **DENIES** the United States' motion for partial summary judgment (Doc. No. 238) and **GRANTS IN PART AND DENIES IN PART** the Counties' motion for partial summary judgment (Doc. No. 237).  The Court further **FINDS AS MOOT** the Counties' motion for a hearing (Doc. No. 257).

**IT IS SO ORDERED.**

Dated this 31st day of October, 2019.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court